State ex rel. Dulaney v. Nygaard, 174 Wis. 597.

STATE EX REL. DULANEY, Respondent, vs. NYGAARD, County Clerk, Appellant.

*June 2—July 28, 1921.*

*Taxation: Incomes: Stock dividends: Constitutional law: Construction of constitution or amendment.*

1. The rule known as the American rule, that, where there is an ownership of stock for a term and a remainder over, income accumulated during the term and distributed as dividends, regardless of how distributed, goes to the owner for the term, while followed in Wisconsin (*Soehnlein v. Soehnlein,* 146 Wis. 330), is not deemed controlling on the question as to whether, under the amendment of the constitution adopted in 1908, stock dividends are included within the word "incomes" and therefore taxable.

State ex rel. Dulaney v. Nygaard, 174 Wis. 597.

2. Under sec. 1, art. VIII, Const., as amended in 1908, providing that the rule of taxation shall be uniform and that taxes may be imposed on incomes, the act of 1917 (sec. 1087m—2, Stats.), declaring that the term "income" shall include all dividends derived from stocks, the term "dividends" including any distribution, whether in cash or in the stock of a corporation, is valid; and a stock dividend paid to the stockholder by a foreign corporation doing no business in Wisconsin is taxable as income although not disposed of by the stockholder.

3. The word "income," as used in the amendment, has been given in former cases a liberal rather than a technical meaning; and when a clause in a constitution or an amendment thereof confers new broad powers upon the legislature, it is not within the province of the courts to limit the grant by technical requirements.

4. The question whether a law should be held void because of its repugnance to the constitution is one of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES WICKHAM, Circuit Judge. *Reversed.*

For the appellant there was a brief by the *Attorney General, E. E. Brossard,* assistant attorney general, and *V. M. Stolts,* district attorney of Eau Claire county, and oral argument by *Mr. Brossard.*

For the respondent there was a brief by *Bundy & Beach* of Eau Claire, and oral argument by *P. M. Beach.*

JONES, J. This is a *certiorari* to review the proceedings of the county income tax board of review of Eau Claire county relative to plaintiff's income. The plaintiff, a resident of Wisconsin, received during the income year in question dividends from a foreign corporation doing no business in Wisconsin, which dividends were declared in stock out of its earnings and profits accrued since January 1, 1911, but he did not include them in his income report. The taxing authorities included said stock dividends in the plaintiff's taxable income and computed his income tax accordingly.

This action was set aside by the trial court and such dividends held not taxable.

The constitutional provision in this state as amended in 1908 is as follows:

Art. VIII, sec. 1. "The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe. Taxes may also be imposed on incomes, privileges and occupations, which taxes may be graduated and progressive, and reasonable exemptions may be provided."

The original income tax statute, passed in 1911 (ch. 658), provided:

"2. The term 'income,' as used in this act, shall include: . . .
"(d) All dividends or profits derived from stock or from the purchase and sale of any property or other valuables acquired within three years previous or from any business whatever." Sec. 1087m—2, Stats.

In 1917 the act was amended, and now reads:

"2. The term 'income,' as used in this act, shall include: . . .
"(b) All dividends derived from stocks and all interest derived from money loaned or invested in notes, mortgages, bonds or other evidence of debt of any kind whatsoever, provided, that the term 'dividends' as used in this section shall be held to mean any distribution made by a corporation, joint stock company or association, out of its earnings or profits accrued since January 1, 1911, and paid to its shareholders whether in cash or in stock of the corporation, joint company or association." Sec. 1087m—2, Stats.

The question is presented for the first time in this court whether under the clause of the constitution already quoted it is competent for the legislature to impose a tax upon the stockholder on account of stock dividends declared by corporations and received by him; in other words, whether a stock dividend may be included within the word "incomes."

State ex rel. Dulaney v. Nygaard, 174 Wis. 597.

The question whether stock dividends should be treated as income or capital is by no means a new one, but it has generally come before the courts in determining the rights of life tenants and remaindermen. On this subject there have been many decisions and wide differences of opinion. In this opinion it is unnecessary to review the different rulings on this subject, since in a late case Mr. Justice MARSHALL, in a very elaborate opinion, made such a review, classifying and citing many decisions. *Soehnlein v. Soehnlein,* 146 Wis. 330, 131 N. W. 739. There is general agreement in the proposition that when a life tenancy is created by a will or other instrument the intent of the creator of the term must govern. But when no such manifest intent appears it was held by this court in the *Soehnlein Case,* following what is known as the American rule, that when there is an ownership of stock for a term and a remainder over, income accumulated during the term and distributed as dividends, regardless of how distributed, goes to the owner for the term.

It is strongly urged by the attorney general that this decision is decisive of the present case and is a rule of property. It is argued that if the plaintiff had received the dividends as a life tenant while this statute and the decision just referred to were in force, he would have received it as income, and that it would be absurd to deny that it was income subject to taxation. But we are not convinced that the *Soehnlein Case* is conclusive on the issue now before us in construing the constitutional amendment and the statute. The word "income" is a very broad and inclusive term and may not have exactly the same meaning in a will and in a state or federal constitution or a statute. This was well illustrated in two decisions in Massachusetts. In the leading case in that state, decided in 1868, it was declared: "A simple rule is, to regard cash dividends, however large, as income, and stock dividends, however made, as capital." *Minot v. Paine,* 99 Mass. 101. This was the rule as between life ten-

ants and remaindermen when an amendment to the constitution was passed in 1915 authorizing a tax on incomes. After the enactment of a statute imposing income taxes on "dividends on shares in all corporations and stock companies," the supreme judicial court held that it was not bound by the decision in the *Minot Case, supra,* but that upon this point the inquiry was as to the intention of the legislature as manifested by the language used. Notwithstanding its former interpretation of the word "income," the court upheld a tax upon gains derived from the sale of rights to subscribe to new shares of a corporation and also upheld an income tax on stock dividends. *Tax Comm'r v. Putnam,* 227 Mass. 522, 116 N. E. 904.

There are very few decisions on the exact question here involved, but they are those of courts of high authority and are entitled to much weight. The case most relied upon by plaintiff is *Eisner v. Macomber,* 252 U. S. 189, 40 Sup. Ct. 189. This case involved a construction of the Sixteenth amendment to the federal constitution, which provides as follows: "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration," and of an act of Congress declaring that a "stock dividend shall be considered income, to the amount of its cash value." The complaint alleged that in imposing the tax the revenue act violated that clause of the constitution which requires direct taxes to be apportioned according to population and that the stock dividend was not within the meaning of the Sixteenth amendment.

In an able and elaborate opinion Mr. Justice PITNEY, for the majority of the court, reviewed former decisions of the court holding that taxes upon rents and profits of real estate and upon returns from investments of personal property are in effect direct taxes upon the property from which the income arises, imposed by reason of ownership, and that Con-

gress cannot impose such taxes without apportioning them among the states according to population as required by clauses of the original constitution. It was held that the Sixteenth amendment did not extend the taxing power to new subjects, but merely removed the necessity which otherwise might exist for an apportionment among the states of taxes laid on incomes; that the Sixteenth amendment should not be construed to repeal or modify, except as applied to income, these provisions of the constitution that require an apportionment according to population for direct taxes upon property real or personal. In order to give the original clauses of the constitution proper effect save as modified by the amendment, the court entered into a discussion of the meaning of "income" and "capital" and their relation to each other, giving definitions of each. It was held that the interest of a stockholder is a capital interest of which the certificates are only evidence; that until liquidation or a declaration of a dividend he has no right to withdraw any part of either capital or profits from the common enterprise; that the corporation has full title, legal and equitable, to all the assets; that if profits have been made and not divided they give no claim to the stockholder for any particular sum of money, or any right to any particular portion of the assets or any share in them, until the directors conclude that dividends shall be made and a particular part of the assets segregated from the common fund for that purpose; that until a dividend is paid in money or some other divisible property, or an advantageous sale is made, or until liquidation, the stockholder realizes no gain or profit and derives no profit from the capital invested; that when a surplus exists it may be adjusted on the books by declaring a stock dividend; that this is no more than a book adjustment, in essence not a dividend, but rather the opposite, not altering the proportionate interest of the stockholder, but simply increasing the number of the shares with consequent dilu-

tion of the value of each; that instead of being a realization of profits it tends to postpone realization, since the fund represented by the new stock has been transferred from surplus to capital; that the original investment and all the accretions still remain the property of the company subject to business risks which may wipe out the entire investment, and the stockholder has received nothing answering the definition of income within the meaning of the amendment; that the stock dividend takes nothing from the property of the corporation and adds nothing to that of the stockholder; although indicating that he is richer by reason of the increase of his capital, it shows that he has not received or realized any income. It is conceded in the opinion that if the stockholder sells the new shares and realizes a profit, such profit is taxable as income.

We have given this partial outline of this decision because it presents in the ablest and most authoritative manner the reasoning against legislative power to tax stock dividends as income. The persuasiveness of the opinion as authority is somewhat weakened by the fact that it is a five-to-four decision, four of the Justices having dissented. Mr. Justice HOLMES and Mr. Justice DAY dissented on the ground that the word "incomes" in the Sixteenth amendment should be read in a sense most obvious to the common understanding at the time of its adoption. It was their view that the known purpose of the amendment was to get rid of nice questions as to what might be direct taxes, and that most of the people not lawyers would suppose when they voted for it that they put the question at rest. Mr. Justice BRANDEIS wrote an opinion, concurred in by Mr. Justice CLARKE, in which the whole subject was ably discussed, holding that the language of the amendment was broad enough to include stock dividends and that the tax should be upheld.

The majority of the court may have been somewhat influenced by the fact that since the case of *Gibbons v. Mahon,*

136 U. S. 549 (1889), 10 Sup. Ct. 1057, the court had held that, as between life tenant and remainderman, ordinarily a dividend declared in stock is to be deemed capital and a dividend in money is to be deemed income. This decision was analyzed and criticised by Mr. Justice MARSHALL in the *Soehnlein Case,* 146 Wis. 330, 131 N. W. 739, and, as already indicated, a different rule was adopted by this court. The majority opinion in the case of *Eisner v. Macomber,* 252 U. S. 189, 40 Sup. Ct. 189, clearly shows that the Justices felt constrained to give a rather strict construction to the amendment in order to avoid conflict with original clauses in the constitution relating to the levying of direct taxes. In referring to the Massachusetts case sustaining the taxation of stock dividends as income Mr. Justice PITNEY said:

"The Massachusetts court was not under an obligation, like the one which binds us, of applying a constitutional amendment in the light of other constitutional provisions that stand in the way of extending it by construction." Page 217.

The problem is presented to us under quite different conditions. If we follow the rule declared in the *Soehnlein Case,* that in the absence of a contrary direction stock dividends are to be treated as income in all cases, as argued by the attorney general, there is only one alternative, namely, to sustain the statute. Although, as indicated, we do not regard the rule laid down in that case as absolutely controlling in this, since the questions involved are somewhat different, it has an important bearing on the meaning of the word "income" as declared by this court. As between life tenant and remainderman the word has a settled meaning in this state, and we can see no reason for giving a different meaning as between a taxpayer and the state unless it had acquired such different meaning before the constitutional amendment was adopted.

Before the adoption of the amendment in this state the simple rule prescribed by the constitution was: "The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe." Art. VIII, sec. 1. Obviously there is nothing in this language which calls upon us in any way to limit the meaning of the words "incomes" and "privileges," used in the amendment, even if we should hold that an amendment to a constitution should be limited by the terms of a clause in the original document. It is thus evident that some of the grounds relied on in the federal decision do not here apply.

There can be no doubt but it is competent by provision in the constitution, or amendment thereto, to subject stock dividends to taxation. No contention to the contrary is made. It is claimed, however, that they were not included in the word "incomes" and that this was not the intention of those adopting the amendment. It would serve no useful purpose to attempt to analyze the definitions of income as given in the standard dictionaries at the time the amendment was adopted. Very different inferences could be drawn from them, and the differences of opinion among lawyers, judges, and economists are and were quite irreconcilable. It is certain that before that time most of the decisions relating to the rights of life tenants and remaindermen had treated stock dividends as income. It is a matter of common knowledge that stock dividends were generally welcomed by shareholders in about the same manner as cash dividends; that when it was known in advance that stock dividends were to be issued the market value of the stock advanced. Stockholders and the public realized that when such dividends were issued the owner of the stock acquired new and substantial rights. Although his proportionate interest in the assets of the corporation was not increased, he retained his original shares and received others which represented surplus earnings which were added permanently to capital. Al-

though so long as he held the new certificates his proportionate interest was the same, he was assured that the corporation had made net earnings not liable to be used to pay higher salaries to officers or otherwise diverted from the business of the company. It is optional with him to hold and allow his share of the net earnings to remain permanently in the business or to sell the certificates and obtain their cash value. It is admitted by counsel for plaintiff that if plaintiff had sold the new certificates a tax could have been imposed, because the owner would have had something different from mere paper evidence of the profits earned. He would then have realized his profit.

In the opinion of Mr. Justice PITNEY above mentioned much stress is laid upon the claim that the owner of a stock dividend had not realized his profits and that there can be no tax imposed until a sale. But we consider this objection rather theoretical than practical. Stock dividends actually earned and legally declared have a market value and are easy of transfer. The owner has the option to keep or to sell his stock; but we cannot agree that the right of the legislature to impose a tax upon his profits is to be determined by the exercise or non-exercise of such option. Mr. Justice PITNEY stresses the words "derived" and "from" in the Sixteenth amendment and construes similar words in a definition of income previously adopted by the court as distinguishing the gains taxable under the federal amendment from gains in a general sense. He says:

" 'Derived—from—capital,' "—" 'the *gain—derived—from—capital*,' etc. Here we have the essential matter: *not* a gain *accruing to* capital, not a *growth* or *increment* of value *in* the investment; but a gain, a profit, something of exchangeable value *proceeding from* the property, *severed from* the capital however invested or employed, and *coming in*, being '*derived*,' that is, *received* or *drawn by* the recipient (the taxpayer) for his *separate* use, benefit and disposal;—*that* is income derived from property. Nothing else answers the description." Page 207.

But we are under no such restriction. Our constitutional provision subjects to taxation "incomes" without limitation.

The legislature has not undertaken to tax the profits of a shareholder until they are distributed in the form of cash or stock. A statute undertaking to impose an income tax upon increment of value arising from undivided profits would require investigation of the corporate profits and would be more difficult of administration than one imposing the tax after the ascertainment of such profits by the corporation and the declaration of the dividend, and it is not necessary to decide whether such a tax could be imposed. The dividend affords evidence of the stockholder's share in the earnings which have been added to the assets of the company. It was evidently the view of the legislature that the time of receiving such dividends was the most convenient occasion for levying the tax upon the stockholder's interest in the undivided gains and profits of the corporation up to that time, and that the stockholder could be properly taxed upon this increment to his wealth whether evidenced by cash or a stock dividend readily convertible into money.

There might be unlimited argument and refinement concerning the meaning of "income," but we cannot believe that the legislature and the people adopting the amendment gave the word any such technical and restricted meaning as is claimed by plaintiff. It was undoubtedly their intention in adopting this far-reaching amendment to the constitution to shift to a greater degree than before the load of taxation upon those best able to pay. It seems to us incredible that they expected that the gains of stockholders in corporations should be increased indefinitely and that the liability of those gains to taxation should depend upon the manner in which boards of directors should declare the profits. It seems far more consistent with the general purpose of the amendment that they were considering substance rather than form and that they did not intend that the advantages and gains of stockholders derived from their investments should remain

free from taxation, while other citizens, perhaps less able to pay, should bear the burden.

Although the direct question involved now comes before this court for the first time, the word "income" as used in the amendment under consideration has been given a liberal rather than a technical meaning. *Van Dyke v. Milwaukee,* 159 Wis. 460, 150 N. W. 509; *State ex rel. Howe v. Lee,* 172 Wis. 381, 178 N. W. 471.

In considering the statute involved in this case there is no room for construction. The language is so explicit in giving authority to tax stock dividends that there can be no possible doubt of the legislative intent. In the case of *Tax Comm'r v. Putnam,* 227 Mass. 522, 116 N. E. 904, above referred to, stock dividends were not in express terms made subject to the tax. But the court construed the word in the constitutional amendment and the statute to include them.

If we were to adopt the view of plaintiff's counsel in this case we should strictly construe the constitutional amendment above quoted. But we cannot agree with that view. Clauses in constitutions and their amendments become the paramount and organic law. They state the basic principles on which the fabric of future legislation is to be erected. Three or four lines may remain for generations as the foundation for innumerable and complicated statutes. So long as their spirit and real meaning are not violated they may form the safe foundation for legislation never anticipated by the authors, who could not foresee the new conditions to arise in the changing economic and industrial life. When a clause in a constitution or an amendment confers new broad powers upon the legislature, it is not within the province of the judiciary to whittle down the grant by technical refinements.

More than a century ago it was held by the supreme court of the United States that the question whether a law should be held void for its repugnance to the constitution is at all

times a question of much delicacy which ought seldom if ever to be decided in the affirmative in a doubtful case. *Fletcher v. Peck,* 6 Cranch, 87. In a later case the rule was stated as follows:

"It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body, by which any law is passed, to presume in favor of its validity, until its violation of the constitution is proved beyond all reasonable doubt." *Ogden v. Saunders,* 12 Wheat. 213, 270.

This is the rule which has generally prevailed and which has been too often declared by this court to require the citation of cases.

For these reasons we agree with the conclusions reached by the courts of Massachusetts and New York in *Tax Comm'r v. Putnam,* 227 Mass. 522, 116 N. E. 904; *People ex rel. Pullman Co. v. Glynn,* 130 App. Div. 332, 198 N. Y. 605, 92 N. E. 1097, instead of that which prevails in the federal courts; and we hold that the statute under consideration is valid.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment affirming the assessment of the county income tax board of review, and that the petition be dismissed.