[S. F. No. 16350.   In Bank.—March 7, 1941.]

MARY C. McCREERY et al., Appellants, v. CHARLES J. McCOLGAN, as Franchise Tax Commissioner, etc., Respondent.

John C. Altman and Willard L. Ellis for Appellants.

Todd W. Johnson, Philip D. Johnston, Jesse H. Steinhart, B. J. Feigenbaum, Richard W. Jennings, Chickering & Gregory, Claude I. Parker, Ralph W. Smith and Bayley Kohlmeier, as *Amici Curiae,* on Behalf of Appellants.

Earl Warren, Attorney-General, and H. H. Linney, Valentine Brookes and James J. Arditto, Deputies Attorney-General, for Respondent.

THE COURT.—Four actions were brought by different plaintiffs to recover income taxes paid under protest. In each action an appeal was taken from the judgment entered for the defendant. These appeals are presented in one record and each involves the question of the constitutionality of section 34 of the California Personal Income Tax Act of 1935 (Stats. 1935, p. 1090 [Deering's Gen. Laws, 1935 Supp., Act 8494]), under which the taxes were imposed.

The act is entitled: "An Act to provide for the levy and collection of a tax upon the incomes of individuals, estates and trusts, and to provide for the disposition of the revenues therefrom, and to provide that this Act shall take effect immediately." Its provisions applied to tax incomes received or accrued after January 1, 1935. Section 34 provides: "For the purpose of this act a personal holding company whether or not organized under the laws of this state shall not be recognized as a legal entity separate and distinct from the shareholders thereof. Any such company having more than one shareholder shall be deemed a partnership." By section

22 the net income of a partnership was computed in the same manner and upon the same basis as in the case of an individual. Section 2 (o) defined "personal holding company" as any corporation (with exceptions not pertinent here), "if (1) at least 80 per centum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities and (except in the case of regular dealers in stock or securities) gains from the sale of stock or securities, and (2) at any time during the last half of the taxable year more than fifty per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals. For the purpose of determining the ownership of stock in a personal holding company—(3) stock owned, directly or indirectly, by a corporation, partnership, estate or trust shall be considered as being owned proportionately by its shareholders, partners or beneficiaries; (4) an individual shall be considered as owning, to the exclusion of any other individual, the stock owned, directly or indirectly, by his family, and this rule shall be applied in such manner as to produce the smallest possible number of individuals owning, directly or indirectly, more than fifty per centum in value of the outstanding stock; and (5) the family of an individual shall include only his brothers and sisters (whether by whole or half blood), spouse, ancestors, and lineal descendants." The provisions quoted from sections 34 and 2 (o) were repealed at the next session of the legislature (Stats. 1937, p. 1831).

The following facts are admitted by the pleadings or by stipulation:

The Mary C. McCreery Trust, of which Mary C. McCreery was the beneficiary, owned 1500 shares, and Richard S. McCreery, her husband, owned 3000 shares of stock of Burlingame Investment Company, a California corporation, which during 1935 was a personal holding company as defined by the act. Each shareholder paid income tax for the year 1935. In June, 1938, the Franchise Tax Commissioner, after notice and over the protest of the McCreerys, levied a deficiency income tax of $580.83 on Mary C. McCreery and $772.88 on Richard S. McCreery, based on additions of income for 1935 by virtue of the provisions of section 34 of the Personal Income Tax Act of 1935. The deficiency taxes were paid under protest.

Lucie Stern owned stock of Northern Fisheries, Inc., a Washington corporation. That company was doing business in this state. It was a personal holding company within the definition of the act. Lucie Stern paid under protest a deficiency income tax of $90.45, determined pursuant to the provisions of said section 34 of the income tax act.

Similarly Eleanor H. Koshland paid a deficiency income tax for 1935 of $1825.98 based on her *pro rata* share of the net undistributed income of Santa Inez Company and Iris Securities Company, as adjusted by the Commissioner. The Santa Inez Company and the Iris Securities Company were domestic corporations defined as personal holding companies under the act.

It is stipulated that the computations of the Commissioner in all cases were correct and that the several deficiency taxes were properly imposed, if section 34 of the Personal Income Tax Act of 1935 was constitutional.

The trial court based its judgments for the defendant on findings that the respective *pro rata* shares of undistributed income represented taxable income of the respective plaintiffs for the year 1935; that section 34 violated neither the due process nor the equal protection clauses of the federal Constitution, nor section 11 of article I of the state Constitution, providing that all laws of a general nature should have a uniform operation. It is the contention of the several plaintiffs that the court erroneously concluded that sections 34 and 2 (o) did no violence to the above-mentioned constitutional provisions.

Unquestionably the purpose of the legislation was to reach the income of persons whose property had been transferred to holding companies to escape payment of income taxes. The subject matter had long been a problem to both federal and state authorities. Section 117 of the Internal Revenue Act of 1864 (18 Stat. at Large, 281), taxing shareholders of certain corporations on corporate income, whether divided or otherwise, was upheld in *The Collector* v. *Hubbard,* 12 Wall. (79 U. S.) 1 [20 L. Ed. 273]. By the Sixteenth Amendment to the Constitution Congress for the first time was empowered to tax incomes without apportionment among the several states. The Federal Income Tax Act of 1913 (38 Stat. 114, 166), provided that for the purpose of computing the graduated additional tax known as surtax the individual taxpayer's

income should embrace his proportion of profits, whether divided or not, in a corporation formed or fraudulently availed of for the purpose of preventing the imposition of that tax. The Revenue Act of 1916 (39 Stat. 756, 758), provided that dividends be included in net income, whether distributed in cash or in stock of the corporation, the stock dividend to be considered income to the amount of its cash value. In *Eisner* v. *Macomber*, 252 U. S. 189 [40 Sup. Ct. 189, 64 L. Ed. 521], the tax was held invalid because it was a levy on capital, which Congress was not empowered to exercise without apportionment. Of the case of *The Collector* v. *Hubbard, supra,* it was said that insofar as it seemed to uphold the right of Congress to tax without apportionment a stockholder's interest in accumulated earnings prior to dividend it must be regarded as overruled by *Pollock* v. *Farmers Loan and Trust Co.,* 158 U. S. 601 [15 Sup. Ct. 912, 39 L. Ed. 1108]. Congress thereupon repealed the provision taxing stock dividends. However, the rule of *Eisner* v. *Macomber* was not followed in cases where dividends were issued in stock of a reorganized corporation (*United States* v. *Phellis,* 257 U. S. 156 [42 Sup. Ct. 63, 66 L. Ed. 180]); where common stock was issued as a dividend to holders of preferred stock of the same company (*Koshland* v. *Helvering,* 298 U. S. 441 [56 Sup. Ct. 767, 80 L. Ed. 1268, 105 A. L. R. 756]); or where preferred stock dividends were issued to holders of common shares of the same corporation (*Helvering* v. *Gowran,* 302 U. S. 238 [58 Sup. Ct. 154, 82 L. Ed. 224]). In such cases the dividend stock was held to be income and not capital.

*Eisner* v. *Macomber, supra,* is relied upon as support for the contention that to tax a shareholder on his *pro rata* share of the undivided profits of a corporation amounts to a tax on capital or property, as distinct from a tax on income. It is, therefore, claimed that the provisions of the act here in question were invalid because they embraced a subject not expressed in the title (sec. 24, art. IV, Calif. Const.). It is also urged that treatment of undivided corporate profits as income of the shareholders for the purposes of the act was a measure of the tax upon one person's income by reference to the income of another, contrary to the due process and equal protection clauses as exemplified in *Hoeper* v. *Tax Commission,* 284 U. S. 206 [52 Sup. Ct. 120, 76 L. Ed. 248]. Neither of those cases, however, presents an obstacle to valid state legislation enacted

to prevent income tax evasion. ▮ A taxpayer can have no constitutional protection in any particular method of tax avoidance. The legislature has the right to provide measures to reach all of the particular class of taxable property. (See *Helvering* v. *National Grocery Co.*, 304 U. S. 282 [58 Sup. Ct. 932, 82 L. Ed. 1346].) It is not hampered by the constitutional limitation of apportionment involved in federal legislation. (See *Eisner* v. *Macomber, supra,* at p. 217; *State* v. *Nygaard,* 174 Wis. 597 [183 N. W. 884]; *State* v. *Cary,* 181 Wis. 564 [191 N. W. 546].)

Since the case of *Eisner* v. *Macomber,* Congress has enacted various provisions imposing higher income tax rates on personal holding corporations. It has also provided for taxation to resident stockholders on their proportionate shares of the accumulations of income of foreign holding companies. Recent decisions of the United States Supreme Court indicate that the corporate entity may not be a bar to the taxation of corporate income to its shareholders. (See *Heiner* v. *Mellon,* 304 U. S. 271 [58 Sup. Ct. 926, 82 L. Ed. 1337], and *Helvering* v. *National Grocery Co.,* 304 U. S. 282 [58 Sup. Ct. 932, 82 L. Ed. 1346].) The decision in the latter case discloses that shareholders may be made liable for an income tax on their proportionate shares of undistributed profits of a corporation.

▮ The conclusion that the legislature may impose an income tax on shareholders of personal holding corporations on the basis of the undistributed profits of such corporations is determinative of the appeals herein. The contention that the legislature should have accorded different treatment to domestic and to foreign corporations, as has been done by the federal government, is not meritorious. It is true that the federal government has imposed income surtaxes on domestic personal holding companies (sec. 500, 26 U. S. C. A., 52 Stat. 557), and has imposed income taxes on shareholders of foreign personal holding corporations based on the undistributed profits of such corporations (sec. 337, 26 U. S. C. A., 52 Stat. 549). The test provided in each instance as to what constitutes a personal holding corporation is similar to that contained in the California act. This separate treatment, however, cannot be said to proceed from any predetermination that so to tax the shareholders of domestic corporations would result in taking property without due process of law. If the state legislature may tax the shareholders on corporate profits

of personal holding corporations, whether distributed or not, it may be required, under the Fourteenth Amendment, to tax alike the shareholders of domestic and foreign personal holding corporations. It is not necessary herein to decide that question.

It is true that the enactment of taxing provisions is governed by the due process clauses (*Heiner* v. *Donnan,* 285 U. S. 312 [52 Sup. Ct. 358, 76 L. Ed. 772] ; *Coolidge* v. *Long,* 282 U. S. 582 [51 Sup. Ct. 306, 75 L. Ed. 562] ; *Blodgett* v. *Holden,* 275 U. S. 142 [48 Sup. Ct. 105, 72 L. Ed. 206] ; *Nichols* v. *Coolidge,* 274 U. S. 531 [47 Sup. Ct. 710, 71 L. Ed. 1184] ; *Brushaber* v. *Union Pac. R. Co.,* 240 U. S. 1 [36 Sup. Ct. 236, 60 L. Ed. 493] ). Such cases have held unconstitutional attempts to impose taxes retroactively, or taxes based on an incontrovertible presumption of fact.

The federal courts, however, have upheld the classification of personal holding corporations provided by the federal act imposing income surtaxes on domestic personal holding corporations. (*Foley Securities Corp.* v. *Commissioner,* 106 Fed. (2d) 731; *Noteman* v. *Welch,* 26 Fed. Supp. 437, affirmed 108 Fed. (2d) 206.) The court in the Foley Securities Corporation case relied on decisions of the United States Supreme Court to the effect that except in rare and special instances the due process of law clause of the Fifth Amendment was not a limitation upon the taxing power conferred upon Congress and that no reason existed for applying a different rule against a state in the case of the Fourteenth Amendment. It placed special reliance on *Magnano Co.* v. *Hamilton,* 292 U. S. 40, 44 [54 Sup. Ct. 599, 78 L. Ed. 1109], where it was said: ''That clause [the Fifth Amendment] is applicable to a taxing statute such as the one here assailed only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property. . . . Nor may a tax within the lawful power of a state be judicially stricken down under the due process clause simply because its enforcement may or will result in restricting or even destroying particular occupations or businesses . . . unless, indeed, as already indicated, its necessary interpretation and effect be such as plainly to demonstrate that the form of taxation was adopted as a mere disguise, under which there was exercised, in reality, another and different power denied by the Federal

Constitution to the state." In *Noteman* v. *Welch,* 108 Fed. (2d) 206, a company coming within the definition of personal holding corporation was held covered by the act even though in fact it might not have been formed for the purpose of tax evasion.

▉ In the present case there can be no question of confiscation, tax disguise, or arbitrary classification. The statute was clearly one imposing an income tax, which the legislature had the power to do, upon shareholders of personal holding corporations as defined by the act. The statute clearly imposed on resident shareholders of all such personal holding corporations a tax on undistributed profits of such corporations. It therefore operated uniformly on all alike throughout the state. Arbitrary discrimination cannot be held to result because a test of tax evasion was not made the basis for the imposition of the tax on shareholders. Inasmuch as such a basis was not made the test of tax liability, it cannot be said that the present case is governed by *Heiner* v. *Donnan,* 285 U. S. 312, *supra,* holding that a statute which imposes a tax based upon an incontrovertible assumption of fact is violative of the Fourteenth Amendment. No good reason is presented why the legislature may not define personal holding corporations and classify them for income tax purposes in accordance with the provisions of the statute. That such classification resulted in a different treatment of the shareholders of such companies, i. e., as partners, was not an insuperable obstacle to the constitutionality of the provisions. ▉ The plaintiffs have not met the burden of showing that there could not have been any reasonable basis for the judgment of the legislature in providing for the different treatment. In fact the presumptions are to the contrary, namely, that facts existed which supported such a basis of classification and that the same, therefore, was reasonable.

The judgments are affirmed.

Traynor, J., took no part in the consideration or decision of this case.