[Civ. No. 7119. Third Dist. July 27, 1945.]

THE PEOPLE, Respondent, v. KEITH RAILWAY EQUIPMENT COMPANY (a Corporation), Appellant.

340

Leon S. Hirsh, Jerome L. Schiller and John D. Costello for Appellant.

Robert W. Kenny, Attorney General, and A. A. Kragen

and John L. Nourse, Deputies Attorney General, for Respondent.

ADAMS, P. J.—This action was brought by the state to recover taxes claimed to be due from defendant for the years 1937 and 1938, under the Private Car Tax Act (Stats. 1937, p. 621; Deering's Gen. Laws, 1937, Act 8496). The amended complaint alleged that defendant, an Illinois corporation, during 1937 and 1938 owned private cars which were furnished to shippers for the transportation of property; that defendant did not file a report with the State Board of Equalization as required by section 4 of aforesaid act; that the board, from information in its possession, estimated that defendant, during 1937 had habitually within this state an average of 56 private cars which were operated during that year upon railroads in California; that the board assessed said cars at $29,600 and, pursuant to section 6 of the act, added a penalty of 10 per cent; that defendant was served with written notice of the action of the board, but that defendant failed to petition for a reassessment pursuant to section 11 of the act; that thereafter the board fixed a tax rate of $3.60 for $100 of assessed valuation, and duly levied a tax of $1,172.60 upon defendant's cars; that notice of this action was mailed to defendant with a demand for payment, but that defendant failed to pay same, whereupon an additional penalty was added. The prayer was for judgment for $1,289.38 with interest.

Defendant answered and admitted that during 1937 and 1938 it had tank and refrigerator cars operating upon railroads in California, which were not carrying defendant's own property, but denied that it offered to furnish same to anyone. It admitted that the board had assessed it, as alleged in the complaint, but denied that the assessment was based upon information which was pertinent, and alleged that the board's determination of the number of cars and their value was "wholly arbitrary, grossly unreasonable, and fraudulently excessive." It denied that it habitually had "any where near" 56 cars in California during 1937-1938 or that the value of its cars would "even approximate $29,600.00." As a special defense it alleged that the Private Car Tax Act is repugnant to the Fourteenth Amendment and article VI, section 2, of the United States Constitution and violates article XI, section 12,

article XIII, sections 10 and 14, of the Constitution of California. Also it alleged that it owns private cars which it rents to common carrier railroads at a specified rate of compensation fixed by the Interstate Commerce Commission, and that it is not engaged in the transportation of commodities for hire, or otherwise. It further alleged that the several common carrier railroad companies operating in California and certain "Equipment companies" own and operate freight cars of the same kind and that there is no difference in the nature, kind, basic classification and utilization between their cars and defendant's; that the cars of the common carrier railroads and the equipment companies are assessed in a different manner, and that the situs of same for taxation is fixed in the taxing districts within which their cars are actually utilized, and only in proportion to the extent of such utilization and track mileage of the railroad therein, and that tax rates applied thereto are solely for local purposes. It further alleged that the board's action as to defendant results in a tax burden in excess of that placed upon real property by the state; that many taxing divisions have no railroads and that in those where railroad equipment is utilized there is great variance in the amount of such utilization; also that it comes within certain exemptions provided in the act, that the act discriminates against defendant, denies to it the equal protection of the laws, and deprives it of its property without due process.

The trial court found the facts to be substantially as alleged by plaintiff; that defendant's cars were furnished to shippers for the transportation of various commodities upon railroads in California, and elsewhere; that the shippers did not pay any sum directly to defendant for the use of the cars but paid the regular freight charges to the railroad companies which paid defendant 1½¢ per mile; that defendant did not engage in transportation for hire or otherwise, and did not hold itself out to the public as being ready to furnish cars to whoever might require them without reserving the right to refuse to those considered undesirable; that there was no mileage or through-line contract arrangement between defendant and any railroad company operating in California, nor were defendant's private cars leased to any such railroad company. There were findings as to the action taken by the board as alleged by plaintiff, and the failure of defendant to report to the board,

to petition for reassessment, or to pay the tax. Further it was found that railroad companies operating within this state own cars of approximately the same character as those owned by defendant, that certain railroads lease similar private cars from owners other than defendant, and that certain of such railroads operate similar cars owned by railroad companies not operating in this state and compensate the owners thereof either upon a per diem or upon a mileage basis in amount identical with that paid to defendant. Judgment for plaintiff followed.

Defendant has appealed from said judgment, contending that the Private Car Tax Act is unconstitutional; that it does not apply to the cars of defendant; that it imposes a different and higher tax upon cars owned by defendant than is applied to identical cars owned by others; that the method of computing taxes under the act used by the board violates constitutional mandates in that it is without relation to benefits conferred upon the property, and without consideration of the situs and use of the cars; that the method of computing the number of defendant's cars in California was not reasonably suited to achieve a correct result; that plaintiff did not make a prima facie case at the trial, because it merely introduced the certificate of delinquency as provided by section 18 of the act, and that a motion for a nonsuit made by defendant should have been granted; and, finally, that the trial court erred in sustaining plaintiff in its refusal to produce the records of the Board of Equalization upon demand by defendant.

Appellant's contention that its motion for a nonsuit should have been granted will be disposed of first. Respondent relies upon *People* v. *Mahoney,* 13 Cal.2d 729 [91 P.2d 1029], wherein a certificate of sales tax delinquency was relied upon as making a prima facie case. The provisions of section 18 of the Private Car Tax Act are the same as those contained in section 30 of the Retail Sales Tax Act, and the decision in the Mahoney case is controlling here. But even if the trial court had erred in denying the motion for a nonsuit, such error could not be relied upon to justify a reversal of the judgment, since defendant did not rest upon its motion, but proceeded to introduce evidence which cured any defects in the state's case. (*Peters* v. *Southern Pacific Co.,* 160 Cal. 48, 52 [116 P. 400]; *Parra* v. *Cleaver,* 110 Cal.App.

168, 170 [294 P. 6] ; *Huston* v. *Schohr,* 63 Cal.App.2d 267, 272 [146 P.2d 730].)

■ Regarding appellant's complaint of the method used by the board in determining the average number of defendant's cars in the state during the taxing period, we are of the opinion that appellant is not entitled to have that method questioned on this appeal. Under the terms of the act, section 4, appellant was required to report to the board setting forth specifically information to enable it to make the assessment prescribed by the act, and where no report is made the board is required to make an estimate "based upon any information available to it . . . of the matters required to enable the board to complete the assessment required." Provision is then made for notice to the owner of the property assessed, who is thus given an opportunity to protest the correctness of the estimate. After the assessment is made it is open to inspection between the first and third Mondays in August of each year during which time the owner of the property assessed may be heard by the board upon a petition for reassessment. Also it is provided that after the tax is levied the board shall mail a notice to each person against whom it is levied. Appellant made no report to the board, and, though forms for returns and the notices provided for as above set forth were mailed to it, it did not petition the board for a reassessment. Having failed to avail itself of the remedy provided by the act and failed to exhaust or even to take advantage of its administrative remedy, it cannot secure judicial relief and seek to have the court, in an action such as this is, review and condemn the method by which the board arrived at its conclusions, and secure a determination by a court of matters properly determinable by the board.

■ One complaining of administrative action must, before seeking judicial relief, exhaust his remedies before the administrative body of whose action he complains. (*Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715].) This rule involves a policy of procedure which favors a preliminary sifting process by the established administrative agency which is authorized to take evidence and determine facts; and while in this state it is held that the findings of fact of purely administrative agencies may be reviewed by the courts in proper proceedings, nevertheless litigants may not, by refusing or neglecting to submit issues of fact to such

agencies, by-pass them, and call upon the courts to determine in a suit such as this, matters properly determinable originally by such agencies. (*Universal Cons. Oil Co.* v. *Byram,* 25 Cal.2d 353, 361, 362 [153 P.2d 746] ; *Dawson* v. *County of Los Angeles,* 15 Cal.2d 77, 81 [98 P.2d 495] ; *Los Angeles Gas & Elec. Co.* v. *County of Los Angeles,* 162 Cal. 164, 165 [121 P. 384] ; *Miller & Lux* v. *Richardson,* 182 Cal. 115 [187 P. 411] ; *City of Los Angeles* v. *Glassell,* 4 Cal.App. 43, 48 [87 P. 241] ; *Gorham Mfg. Co.* v. *State Tax Com.,* 266 U.S. 265 [45 S.Ct. 80, 69 L.Ed. 279, 282] ; *First Nat. Bank* v. *Board of County Commrs.,* 264 U.S. 450 [44 S.Ct. 385, 68 L.Ed. 784] ; *Myers* v. *Bethlehem Shipbuilding Corp.,* 303 U.S. 41 [58 S.Ct. 459, 82 L.Ed. 638].)

In *Gorham Mfg. Co.* v. *State Tax Com.* and in *First Nat. Bank* v. *Board of County Commrs.,* above cited, where appellants contended that taxes had been assessed and collected in contravention of the due process and equal protection clauses of the Fourteenth Amendment, it appeared that they had not availed themselves of the provisions of state laws providing for applications for relief to administrative bodies, and, therefore, had not exhausted the administrative remedies available to them. The Supreme Court refused to consider whether or not the tax was vulnerable to the challenge in respect to its validity on any of the grounds set forth. *Myers* v. *Bethlehem Shipbuilding Corp.* and the Gorham Mfg. Co. case are both cited in the Abelleira case in support of the decision that the rule of exhaustion of administrative remedies is jurisdictional.

But whether or not appellant was entitled to attack at the trial the method used by the board in determining the number of cars it had in the state during the taxing period, appellant failed to show the actual number of such cars, or their actual value, or to produce any testimony to show that the method used by the board resulted in an incorrect conclusion. It produced none of its records. Its witness Clifford stated that he "would estimate" that they had twenty or thirty cars at the most in California in the period toward the end of 1937, "waiting, loading"; that it would be very difficult to determine the average number of cars in the state in 1937; that he did not have his records with him, but that he would say he had twenty-five to thirty cars "throughout the state at all times during the month at or in loading position." It is apparent that appellant, had it desired to do so, could

have produced its own records to show the exact number of its cars; and its failure to do so warranted a conclusion by the trial court that if produced they would not have been favorable to appellant's contentions. It was said in *Illinois Central R. Co.* v. *Minnesota,* 309 U.S. 157, 161 [60 S.Ct. 419, 84 L.Ed. 670, 674] : "That apportionment may not result in mathematical exactitude is certainly not a constitutional defect. Rough approximation rather than precision is, as a practical matter, the norm of any such tax system."

■ Appellant also contends that the Private Car Tax Act does not apply to it because its cars are *leased* to railroads, and under the terms of the act cars leased to any railroad operating in the state are excluded. The answer to this is that the trial court found to the contrary. Appellant produced no evidence that any lease arrangements were made by it with any railroad operating in the state. The only testimony produced by defendant in this connection was given by John J. Clifford, who stated that he was Pacific Coast representative of defendant, and also acted as a broker for other private car owners. He testified as to the manner in which business for defendant was secured by him, stating that he would be contacted by shippers of such products as were transported in cars such as were owned by the private car companies, and that he then furnished such cars as the shippers required; that the cars were sent to the shippers who loaded them, and they were then hauled by the railroad company over whose lines they were routed by the shipper; that the shipper paid to the railroad companies the regular freight charges on the products shipped, and the latter paid defendant 1½¢ per mile for each mile the car moved; that "generally speaking" no charge was made by the Keith Company directly to the shipper. There was no testimony regarding any contract between any railroad company and appellant, and it is clear from Clifford's testimony that the railroad companies did not control appellant's cars as a lessee would have a right to do. He (Clifford) furnished the cars to shippers, and *the shippers* routed them as they desired; appellant and not the railroad companies determined whether its cars were to be used for certain purposes, and it refused to furnish them if a haul was not remunerative; they did not permit their cars to go into Mexico because Mexican lines were slow payers, etc. This testimony fully justified the conclusion of the trial court that appellant's cars were not leased to railroads.

■ Appellant next argues that it is not within the provisions of article XIII, section 14, of the Constitution because that section is applicable only to public service companies, and that the trial court found that it is not a common carrier. It relies upon *Cudahy Packing Co.* v. *Johnson,* 12 Cal.2d 583 [86 P.2d 348], which held that section 14 of article XIII, as enacted in 1910, was not intended to and did not apply to property of a private corporation such as plaintiff in that action which owned certain livestock, refrigerator and tank cars used exclusively for the transportation of its own products. The conclusion of the court in that case, however, was based upon the history of the amendment, and the fact appearing from the report of the commission appointed by the governor which drafted and sponsored it, that it was intended to apply only to public service corporations which should be assessed for state purposes upon the basis of their gross receipts. The decision was also influenced by the fact that the state had not, for nineteen years, assessed the plaintiff company for state purposes, during which period defendant had paid an ad valorem tax on its tangible property within the state.

However, article XIII, section 14, was amended in 1933, at which time its provisions were substantially changed, a tax based upon the actual valuation of the property instead of one based upon gross receipts being provided for therein. It is not shown here, as it was shown in the Cudahy Packing Company case, that the sponsors of the amendment had under consideration only public service corporations, and we find nothing in the measure itself so limiting it.

■ Appellant next attacks the validity of the Private Car Tax Act on the ground that it violates constitutional mandates both state and federal regarding equality and uniformity of taxation. It argues that the act attempts to classify cars belonging to private owners in a separate class from cars of the same kind owned by the railroads, and that this results in lack of uniformity; that the cars belonging to the railroad companies are taxed only in the taxing district in which they are used, and at the rates applicable in such taxing districts, while cars belonging to private owners are taxed for state purposes at the average rate of taxation computed as provided by section 13 of the act; that such a differentiation is unrea-

sonable and arbitrary; and it asserts, though it did not prove, that this results in a higher tax rate on its cars.

We find nothing in the provisions of the Constitution of this state which prohibits the enactment of such a statute as the Private Car Tax Act. As pointed out by the Supreme Court in *Collins* v. *Riley*, 24 Cal.2d 912, 916 [152 P.2d 169], and restated in *Delaney* v. *Lowery*, 25 Cal.2d 561, 568 [154 P.2d 674], the Constitution is not a grant of power, but rather a limitation or restriction upon the powers of the Legislature, which restrictions or limitations must be strictly construed against the limitation; and unless there is some constitutional provision that prohibits a legislative enactment, it cannot be said that the Legislature was without power to enact it.

 Appellant purports to find such prohibitions in section 12 of article XI and section 10 of article XIII; but in citing these sections appellant ignores the fact that section 10 of article XIII contains the words "except as otherwise in this Constitution provided," and that section 12 of article XI was amended in 1933 by the addition of the words "Except as otherwise provided in this Constitution." These sections therefore cannot be said to conflict with section 14 of article XIII, which provides that "the Legislature shall have the power to provide for the assessment, levy and collection of taxes upon all forms of tangible personal property" and "may classify any and all kinds of personal property for the purposes of assessment and taxation in a manner and at a rate or rates in proportion to value different from any other property in the State subject to taxation. . . ."

 Obviously our Constitution does not require complete uniformity of taxation, since it exempts some property from taxation altogether, provides that solvent credits shall be taxed at a lower rate than that imposed on other classes of property, and provides that property on the unsecured rolls shall be taxed at the rate for the previous year and that on the secured rolls at the current rate. (Art. XIII, § 9a.) As stated in *Abrams* v. *San Francisco*, 48 Cal.App.2d 1, 7 [119 P.2d 197] : "But taxpayers may be treated differently if they are of different classes and a law sufficiently meets the constitutional requirement if it acts uniformly upon the whole of any single class of individuals or objects, and the classification is founded upon some natural, intrinsic or constitutional distinction. (*Fullerton Oil Co.* v. *Johnson*, 2 Cal.2d 162 [39 P.2d 796];

*In re Weisberg,* 215 Cal. 624 [12 P.2d 446] ; *Heron* v. *Riley,* 209 Cal. 507 [289 P. 160] ; *People* v. *England,* 140 Cal.App. 310 [35 P.2d 565].) "

Appellant's argument that the tax imposed on freight cars owned by railroads is lower than the tax imposed upon its freight cars and that the act therefore violates constitutional mandates requiring equality and uniformity of taxation, is that the act (§ 13) subjects private cars to "the average rate of taxation . . . computed by adding the county, city, school district or other general or special taxes, not including special assessments, and dividing the amount so obtained by the total assessed valuation" in the state as shown by the county tax rolls for the same year, etc., and that inasmuch as this disregards the existence of railroad mileage in some taxing districts, and because with it go the rates levied in districts having the highest tax rates though such high rate taxing subdivisions have but a small proportion of the railroad and track mileage and hence would have but a small proportion of the time that such transient rolling stock was present in the state, and because with this average go the "very high rates of taxation in the outlying counties and school districts which contain no railroads whatsoever," the effect is to subject appellant's property to a higher rate than that imposed upon rolling stock of the railroad companies, and thus to discriminate against it.

Appellant's argument, however, assumes something not in evidence, for appellant failed to show that the rates applied to it exceed the rates applied to similar property of the railroads, or that the rates of taxation in counties and school districts which contain no railroads have very high rates of taxation. But even if it were so there would not necessarily be a violation of constitutional mandates. Exact equality is not possible under any system of taxation. (*Adams Express Co.* v. *Ohio,* 165 U.S. 194 [17 S.Ct. 305, 41 L.Ed. 683].)

In *Michigan Central Railroad Co.* v. *Powers,* 201 U.S. 245 [26 S.Ct. 459, 50 L.Ed. 744], a statute of Michigan provided that the Board of Tax Commissioners should assess the railroad and certain other corporate property in the state, and that the rate applicable to such property should be the rate which such board should ascertain and determine was the average rate levied upon other property upon which ad valorem taxes were assessed for state, county, township, school and

municipal purposes. One of the grounds for urging that this statute violated constitutional prohibitions, both state and federal, was that it resulted in requiring the railroad company to pay at a rate determined in part by rates in portions of the state where it had no property and whose benefits it did not enjoy. But the court said that such considerations appealed to the discretion of the Legislature and did not make against its power; that unless there was some provision in the state Constitution compelling other action the state might treat its entire territory as comprising a single taxing district, and deal with all property as within the district and subject to taxation accordingly; that sometimes a portion of the taxes thus collected is distributed pro rata to the counties along the lines of the roads, but that the power of the state to apply the taxes from railroad property to state purposes only could not be doubted and is often exercised. It added that, so far as the restraints of the federal Constitution are concerned, it is within the power of a state to separate a particular class of property, subject it to assessment and taxation in a mode and at a rate different from that imposed upon other property, and apply the proceeds to state rather than to local purposes. It quoted from *Kentucky Railroad Tax Cases,* 115 U.S. 321, 327 [6 S.Ct. 57, 29 L.Ed. 414, 419], to the effect that:

"But there is nothing in the Constitution of Kentucky that requires taxes to be levied by a uniform method upon all descriptions of property. The whole matter is left to the discretion of the legislative power, and there is nothing to forbid the classification of property for purposes of taxation and the valuation of different classes by different methods. The rule of equality, in respect to the subject, only requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances."

In *General American Tank Car Corp.* v. *Day,* 270 U.S. 367 [46 S.Ct. 234, 70 L.Ed. 635], plaintiff sued to enjoin the collection of a tax assessed by the State of Louisiana under a statute imposing a tax of 5½ mills on the dollar on all property within the state, but which imposed an additional tax of 25 mills on the dollar of the assessed value of rolling stock of nonresident corporations operated over any railroad in the state. This additional tax was contested on the ground that it violated the provision of the Louisiana Constitution that all

taxes should be uniform, that it violated the federal Constitution by imposing a burden on interstate commerce, and that it denied equal protection of the laws and discriminated against nonresidents. The Louisiana Constitution provided that nonresident owners of rolling stock should be taxed for state purposes only, and at a rate not to exceed 40 mills on the dollar of assessed value. The court said that the Louisiana state courts had upheld the constitutionality of the 25 mill tax (*Union Tank Car Co.* v. *Day,* 156 La. 1071 [101 So. 581]), and that disposed of the objection to the tax under the state Constitution. Regarding the contention that the United States Constitution was violated it said that since all local taxes throughout the state averaged approximately 25 mills and the tax imposed on appellant was substantially the equivalent of the local tax in lieu of which it was assessed, there was no unjust discrimination against nonresidents—that such a classification was not necessarily discriminatory; that "where the taxing statute which is in lieu of a local tax assessed on residents discloses no purpose to discriminate against nonresident taxpayers, and in substance does not do so, it is not invalid merely because equality in its operation as compared with local taxation has not been attained with mathematical exactness. In determining whether there is a denial of equal protection of the laws by such taxation, we must look to the fairness and reasonableness of its purposes and practical operation, rather than to minute differences between its application in practice and the application of the taxing statute or statutes to which it is complementary. *Travelers' Ins. Co.* v. *Connecticut, supra* [185 U.S. 364, (22 S.Ct. 673), 46 L.Ed. 949] ; and see *State R. Tax Cases,* 92 U.S. 575, 612, 23 L.Ed. 663, 673; *Shaffer* v. *Carter,* 252 U.S. 37, 56, 64 L.Ed. 445, 458, 40 Sup.Ct. 221.''

It was further argued by appellant in that case that the finding of the district court that the local tax throughout the state would average about 25 mills was erroneous; that it would average only about 21 mills. But the court said that in the absence of a purpose to discriminate, disclosed by the legislation itself, it would not say that a 4 mill variation would be unconstitutional. Also it said that appellant's contention was not borne out by the record, which showed that in some parishes the total of all state and local taxes exceeded

$30\frac{1}{4}$ mills, etc.; and it concluded by saying that appellant had failed to show that the tax was discriminatory either in principle or in its practical operation, and had laid no foundation for assailing its constitutionality.

From *Union Tank Car Co.* v. *Day, supra,* it appears that appellant was taxed the $5\frac{1}{4}$ mills plus the 25 mills. It sought to enjoin only the 25 mills, urging that no such tax was levied upon any real or personal property, or upon rolling stock or cars owned by residents, and that the tax was discriminatory and arbitrary. The court there said that under the state Constitution all property in the state was subject to the $5\frac{1}{4}$ mills tax; also that it was subject to the payment of local, municipal and district taxes by other provisions of the organic law; that the only difference in the manner of assessment and collection of local taxes levied on the rolling stock of nonresidents, and that levied on rolling stock owned in the state, was that the one was collected by and for the state only, in the form of an additional lieu tax, and the latter was collected by local tax collectors, and apportioned to the locality in which the owners were domiciled; that the Constitution and statutes had for their purpose the fixing of a general average rate of local taxation as to the rolling stock of nonresidents so as to make such rate conform, as nearly as practicable, to the local tax rate paid by residents and thereby approximate a general equality of the burden that should fall upon the two classes of property, and that plaintiff had failed to prove that the additional tax was in excess of what would be legitimate as a general average local tax. Also it said that ''The validity of legislation of this character depends, not upon the ability of courts to indicate some other form of taxation which might result in greater equality of burden, but upon judicial determination whether the necessary operation of such legislation results in an unjust discrimination.'' And as to appellant's contention that the uniformity of taxation provision of the Louisiana Constitution was violated, the court said that it would be difficult to conceive a more uniform state tax in lieu of local taxes than that which is based upon the general average of local taxes, widely varying in rates, and which is imposed upon all tank cars owned by nonresident owners throughout all local districts in which such cars are operated; that (citing 26 R.C.L. 93, 167) it is not required that the tax on nonresidents and residents with respect to the same property be identical, and if substantial equality is provided it

can make no difference that in particular cases a nonresident is taxed higher than a resident with respect to the same property. It concluded that plaintiff was taxed in "substantial uniformity" with other property holders in the state and that was all the law required.

Also in *Nashville, C. & St. L. Railway Co.* v. *Browning,* 310 U.S. 362, 368 [60 S.Ct. 968, 84 L.Ed. 1254], under a Tennessee statute the property of public service corporations was assessed by a state commission; all other property by local officials; and it was contended that as the property assessed by the commission was assessed at its full value, and that assessed by county officials at less than its full value, there was an unlawful discrimination which violated the Fourteenth Amendment. The court said that petitioner's property was not shown to have been assessed differently from other properties in the same *class;* that none of the cases relied upon by petitioner denied power to the state to apply different yardsticks to different classes of property; "That the states may classify property for taxation; may set up different modes of assessment, valuation and collection; may tax some kinds of property at higher rates than others; and in making all these differentiations may treat railroads and other utilities with that separateness which their distinctive characteristics and functions in society make appropriate—these are among the common-places of taxation and of constitutional law."

The wide discretion that may be exercised by legislative bodies in classifying property for taxation without overstepping constitutional limitations, is also pointed out in *New York Rapid Transit Corp.* v. *City of New York,* 303 U.S. 573 [58 S.Ct. 721, 82 L.Ed. 1024], and in *Carmichael* v. *Southern Coal & Coke Co.,* 301 U.S. 495, 509-510 [57 S.Ct. 868, 81 L.Ed. 1245, 1253, 109 A.L.R. 1327].

Appellant relies heavily upon the decision of the Supreme Court of South Dakota in *Ewert* v. *Taylor,* 38 S.D. 124 [160 N.W. 797]. But in that state the Constitution provided that "all taxes must be uniform on all property." In *Puget Sound Power & Light Co.* v. *County of King,* 264 U.S. 22, 27 [44 S.Ct. 261, 68 L.Ed. 541], the court, commenting on *Ewert* v. *Taylor* and similar cases which were there relied upon by appellant, said that they "involved the application of somewhat stringent provisions of state constitutions as to equality of taxation on all kinds of property which left little room for

classification''; that ''Such restrictions have much embarrassed state legislatures because actual equality of taxation is unattainable.''

In the Puget Sound P. & L. case plaintiff was a street railroad company. Under a statute of the State of Washington, the properties of street railroads were assessed and taxed as personal property, though this was not done as to the property of other railroads. This, it was contended, violated the requirements of uniformity of both the state and the federal Constitutions. The Supreme Court of the state in *Puget Sound Power & Light Co.* v. *City of Seattle* 117 Wash. 351 [201 P. 449, 453, 207 P. 689], said regarding the statute:

''There is no vested right, either in a corporation or natural person, to have property assessed in any particular way. Such matters rest entirely within the control and discretion of the Legislature. *Heilig* v. *Puyallup,* 7 Wash. 29, 34 P. 164. It is a question of uniformity and equality in the classes. 'The classification of property for assessment, where uniformity and equality exist in the classes, is a matter of legislative policy.' *Ridpath* v. *Spokane County,* 23 Wash. 436, 63 P. 261. That there is ample reason for the classification made by the statute in this case is easily perceived. Street railways have no fee in the streets, their properties are largely personalty, while the commercial steam railways own their rights of way, and own extensive freight yards, termini and station grounds.''

And when the matter came before the United States Supreme Court, that court said regarding the contention of plaintiff that the statute violated the Fourteenth Amendment: ''We do not think, considering the very wide discretion a legislature has in such a case, that it was arbitrary to tax the whole street railway unit as personalty''; and it held that there was no violation of the Fourteenth Amendment.

But appellant argues that the power of the Legislature to classify property for taxation is exceeded by the act under review; that it is ''invidious and without rational foundation.'' But in *People* v. *Western Fruit Growers,* 22 Cal.2d 494 [140 P.2d 13], the court said at pages 506-507:

''Problems of classification under the California Constitution are thus similar to those presented by the federal equal protection of the laws clause of the 14th Amendment. Under either provision, the mere production of inequality which necessarily results to some degree in every selection of persons

for regulation does not place the classification within the constitutional prohibition. The discrimination or inequality produced, in order to conflict with the constitutional provisions, must be 'actually and palpably unreasonable and arbitrary,' or the legislative determination as to what is a sufficient distinction to warrant the classification will not be overthrown. (*Radice* v. *New York*, 264 U.S. 292, 296 [44 S.Ct. 325, 68 L.Ed. 690]; *Arkansas Natural Gas Co.* v. *Arkansas Railroad Com.*, 261 U.S. 379, 384 [43 S.Ct. 387, 67 L.Ed. 705]; *In re Livingston*, 10 Cal.2d 730, 740 [76 P.2d 1192]; *Rainey* v. *Michel*, 6 Cal.2d 259 [57 P.2d 932, 105 A.L.R. 148]; *Los Angeles City School Dist.* v. *Griffin*, 3 Cal.2d 651 [46 P.2d 141]; *In re Weisberg, supra* [215 Cal. 624 (12 P.2d 446)]; *Martin* v. *Superior Court, supra* [194 Cal. 93 (227 P. 762)]; *Western Indemnity Co.* v. *Pillsbury*, 170 Cal. 686 [151 P. 398]; *In re Cardinal*, 170 Cal. 519, 526 [150 P. 348, L.R.A. 1915F 850].) When a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification. (*In re Fuller*, 15 Cal.2d 425, 437 [102 P.2d 321]; *McCreery* v. *McColgan*, 17 Cal.2d 555, 562 [110 P.2d 1051, 133 A.L.R. 800]; *In re Livingston, supra; Sequoia Nat. Park Stages Co.* v. *Sequoia & General Grant Nat. Parks Co.*, 210 Cal. 156 [291 P. 208]; *Martin* v. *Superior Court, supra; In re Cardinal, supra* [170 Cal. 519]; *County of Los Angeles* v. *Hurlbut*, 44 Cal.App.2d 88 [111 P.2d 963]; *Pacific Gas & Elec. Co.* v. *Moore*, 37 Cal.App.2d 91 [98 P.2d 819].)''

And in *Livingston* v. *Robinson*, 10 Cal.2d 730, 740 [76 P.2d 1192], it is stated that the question of classification is generally one for the legislative power, to be determined by it in the light of its knowledge of all the circumstances and requirements; that its discretion will not be overthrown unless it is palpably arbitrary, but it will be presumed that the Legislature made inquiry to determine whether or not there were evils to be remedied and that the classification made was based upon the result of the inquiry.

Also in *Delaney* v. *Lowery, supra,* at page 573, the court said: ''Clearly, property may be classified for the purpose of taxation as long as the classification is reasonable, and that is

especially true where, as seen, the effect through the years will probably be insignificant.''

 We are not prepared to say that the classification of private cars, set forth in section 2(a) of the act, is ''actually and palpably unreasonable and arbitrary''; and we conclude that the determination of the Legislature that there is a sufficient distinction between private cars as defined in section 2(a) and those excepted in said section, to justify the classification, is controlling. Especially is this true in light of the provisions of article XIII, section 14, *supra,* authorizing the Legislature to ''classify any and all kinds of personal property for the purposes of assessment and taxation in a manner and at a rate or rates . . . different from any other property in this State subject to taxation.''

 The Private Car Tax Act is presumed to be constitutional. In *Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal. 2d 620, 636 [91 P.2d 577], it was said that it is a well-established and universally recognized principle of law that all presumptions and intendments are in favor of the constitutionality of a statute enacted by a Legislature; that all doubts are to be resolved in favor of and not against the validity of a statute; and that before an act may be declared invalid by the judiciary for the reason that it is in conflict with the Constitution, such conflict must be clear, positive and unquestionable. (Also see *Delaney* v. *Lowery, supra; Ray* v. *Parker,* 15 Cal.2d 275 [101 P.2d 665]; *Hart* v. *City of Beverly Hills,* 11 Cal.2d 343, 348 [79 P.2d 1080]; *People* v. *Western Fruit Growers, supra,* at p. 499; 5 Cal.Jur. 626-630; Cooley's Constitutional Limitations (8th ed.) p. 372.) In *Carmichael* v. *Southern Coal & Coke Co., supra,* the court said, p. 510 (L.Ed. p. 1253):

''A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.''

Regarding appellant's contention that the trial court erred in failing to compel compliance by respondent with a subpoena duces tecum issued at appellant's request and served upon respondent, as the subpoena does not appear in the record we are unable to determine its scope. No attempt to compel compliance with it was made prior to the trial, but during the course of the trial appellant's counsel stated that it had requested (and did then request) that respondent produce records of the State Board of Equalization and of the State of California showing any and all tax rates of county, city and school districts and all general and special taxes used in computing the private car tax rate for the years 1937-38 and subsequent years; books and records of the board and of the state showing: The tax rate fixed and paid by common carrier railroad companies operating freight cars of the same kind and nature as the freight cars of the defendant herein; the tax rate fixed and paid by equipment companies operating freight cars of the same kind and nature as the freight cars of the defendant herein; in what counties and taxing districts there was assessed and apportioned during the years 1937-38, and the amount thereof, of cars owned by common carrier railroad companies operated in the State of California, and cars owned by common carrier railroad companies not operated or doing business within the state but rented to railroad companies operating and doing business within the state, cars owned by equipment companies and rented to common carrier railroad companies doing business in the state, together with the nature, kind and physical classification of said cars; in what counties there are railroad lines and in what counties there are no railroad lines; the rate of tax and valuation, if any, placed upon railroad cars other than private cars in the state for the years 1937-38 and subsequent years; the railroad track mileage in the years 1937-38, and subsequent years, in incorporated cities and towns of the state and territory located outside of incorporated cities and towns; and the mileage traveled by each and every car of the defendant herein in California, and in each county or incorporated city or taxing district traveled and traversed by said cars in the years of 1937-38, and subsequent years. Objection to the request was interposed on the grounds that it was too broad and not sufficiently specific, that some of the information was contained in the property statements made to the state by the railroad

companies for the purpose of assessing their property under entirely different acts, which statements were not public documents; that no request had been made for the compilation of figures from the records requested; that appellant had not shown that the records requested were material, and that information which defendant desired from the railroad companies' records should be secured by defendant from the railroad companies themselves. Later in the case the subject of these records was again brought up by defendant, when, it now says, it made an offer of proof but the court "persisted in adhering to its former ruling." But defendant's so-called offer of proof was not, in fact, such an offer. What its counsel said was: "I want to make an offer of proof here that if the records of the State Board of Equalization demanded had been produced we would have been able to show by those records that the tax rate demanded and fixed by the Board of Equalization resulted from the imposition upon the property of the defendant of a tax rate higher than that imposed upon property of identical nature, kind, basic classification, and use owned by others but deemed private cars under the definition of Section 2-a of the Act as construed and interpreted by the board." There was more to the same effect, which it is unnecessary to recite since it is obvious that this did not constitute an offer of proof, but a conclusion of counsel as to what he thought he could have shown had the records been produced. Furthermore there was no ruling on this so-called offer, and obviously none was called for. A little later on in the case the court did say: "I might say that by way of further discussion in connection with the matter of producing records that the other side has made an offer of proof which I know nothing about, but from what I have heard here there are many things in your offer of proof that you would not be able to prove; it is one of those omnibus affairs where you offer to prove almost everything. I take it that you are required to be more specific and not merely say that with the records of the State Board of Equalization you could prove all you have indicated because I am quite sure there are things there that you never could prove by the records of the Board of Equalization, so we will leave that up in the air. If you gentlemen have some things you can prove, some specific facts by resort to specific portions of records or specific documents, that is one thing, but to say that you offer to prove all these things you have

mentioned in this very general way is to my mind insufficient.'' Thereupon defendant modified its request stating that if it could get from the statements of the railroad companies the track mileage, it thought that, with what was already shown, it could establish what it had offered to prove. But the testimony of the witness for the state was that it would take a week or ten days to compile these figures. There was no request by defendant for a continuance for that purpose. We find no error in the court's rulings in this connection. It is well established that demands for the production of records, and subpoenas duces tecum must be reasonable and must be direct and specific in their terms and not couched in general terms, and that the relevancy and materiality of the documents requested must be made to appear. (*McClatchy Newspapers* v. *Superior Court,* 26 Cal.2d 386, 396-399 [159 P.2d 944].)
 Furthermore information regarding the track mileage could have been secured by defendant directly from the railroad companies had defendant seen fit to take the proper steps to secure it; but its position as stated by its counsel was ''Why should the defendant be burdened with the necessity of subpoenaing each and every railroad in the State when the Board has the information.''

We find no error in the rulings of the trial court and the judgment is therefore affirmed.

Thompson, J., and Peek, J., concurred.

A petition for a rehearing was denied August 27, 1945, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1945. Traynor, J., did not participate therein.